IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VRV DEVELOPMENT, L.P., f/k/a VRV DEVELOPMENT, INC., MARKEN MANAGEMENT, GP, L.L.C., and KENNY MARCHANT, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1382 |
| MID-CONTINENT CASUALTY COMPANY, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Partial Summary Judgment [Docket Entry #12] and Defendant's Motion for Summary Judgment [Docket Entry #23]. For the reasons explained below, Plaintiffs' Motion is DENIED and Defendant's Motion is GRANTED.

I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff VRV Development, L.P. ("VRV") is a limited partnership engaged in the development of real property. Its general partner is Plaintiff Marken Management, GP, L.L.C., and its sole limited partner is Plaintiff Kenny Marchant (together with VRV, "Plaintiffs"). Before its conversion into a limited partnership on January 1, 2005, VRV was a corporation known as VRV Development, Inc. ("VRV, Inc."), and Kenny Marchant was its president.[1]

In 2003, VRV, Inc. entered into a contract to sell K. Hovnanian Homes-DFW, LLC ("Hovnanian") certain property in Irving, Texas, to be developed into a residential subdivision.

---

[1] *See* Plaintiffs' Motion, App. at 184 ("Declaration of Kenny Marchant"); Mid-Continent's Motion, Ex. H at 6-7. All page references to Mid-Continent's exhibits are cited as paginated on this Court's electronic filing system, as Mid-Continent neither numbered, nor provided specific references to, its exhibits.

As part of this agreement, VRV, Inc. agreed to design and construct certain retaining walls throughout the subdivision.

In May 2004, VRV, Inc. purchased a commercial general liability policy (the "Policy"), number 04-GL-00563524, from Defendant Mid-Continent Casualty Company ("Mid-Continent").[2] The Policy was issued in the name of VRV, Inc., and was effective from May 25, 2004, to May 25, 2005.[3] Kenny Marchant was insured under this policy in his capacity as an officer or director of VRV, Inc.[4] The Policy was renewed once, under policy number 04-GL-000590504, and expired on May 25, 2006.[5] Mid-Continent was never informed of VRV, Inc.'s conversion into a limited partnership, nor was coverage for the new entity ever requested.[6]

In the fall of 2004, VRV, Inc. retained Bradford Russell, of BR Architects, Inc. and Steve White d/b/a Stone Retaining Walls ("White") to design and construct the retaining walls. The retaining walls were designed by BR Architects between August and December 2004. White constructed the retaining walls from the end of 2004 to January 2006.

In January 2007, various homeowners who had purchased homes from Hovnanian in the subdivision contacted Hovnanian to notify it of large cracks in the upper levels of retaining walls, and of the fact that some retaining walls had begun to collapse.[7] Hovnanian notified VRV of these complaints, and demanded that VRV fix the problems. In March 2007, the homeowners complained that the remaining parts of the walls had failed, causing damage and further disruption to their use of their properties.[8]

---

[2] *See* Mid-Continent's Motion, Ex. E at 3.
[3] *See id.*
[4] *See id.*, Ex. E at 16.
[5] *See id.*, Ex. F at 3.
[6] *See id.*, Ex. G at ¶ 5.
[7] *See* Plaintiffs' Motion, App. at 15.
[8] *See id.* at 16.

On April 18, 2007, Hovnanian filed suit against Plaintiffs, Russell, BR Architects and White in state court, alleging negligence in the construction and design of the retaining walls (the "underlying suit").[9]  On April 24, 2007, Plaintiffs notified Mid-Continent of Hovnanian's claims and requested a defense and indemnification under the Policy.  On July 26, 2007, Mid-Continent denied Plaintiffs' claims for defense and indemnification.[10]

On September 18, 2007, Hovnanian filed an Amended Petition, and Plaintiffs renewed their demand on Mid-Continent.  Mid-Continent denied this second claim on November 5, 2007.[11]

On January 17, 2008, four homeowners intervened in the underlying suit, asserting claims against Plaintiffs for negligence and breach of implied warranties.[12]  On March 9, 2009, the City of Dallas (the "City") intervened in the underlying suit, asserting claims against Plaintiffs for breach of the duty to provide lateral and adjacent support for City property, and for breach of the duty to exercise ordinary care and diligence in planning, designing and building the retaining walls.[13]  The City alleged that it was the owner of a twenty foot wide public utility easement adjacent to VRV's property, under which a water pipe that supplies water to DFW Airport is located, and that as a result of the walls' collapse, it will have to lower or relocate the water pipe to protect it from further collapse of the retaining walls.[14]

On April 15, 2009, Plaintiffs made a third demand on Mid-Continent, citing the new claims made by the homeowners and the City.  Mid-Continent denied this demand on June 23, 2009.[15]

---

[9] *See* Mid-Continent's Motion, Ex. A.
[10] *See* Plaintiffs' Motion, App. at 139-49.
[11] *See id.* at 153-63.
[12] *See id*. at 13-28.
[13] *See id.* at 29-42.
[14] *See id.*
[15] *See id.* at 172-83.

On July 24, 2009, Plaintiffs filed this lawsuit against Mid-Continent, alleging breach of contract and violations of the Texas Insurance Code and the Prompt Payment Act, and requesting declaratory judgment for a construction of the provisions of the Policy and a declaration of the responsibilities and obligations of Mid-Continent for payment of defense costs under the Policy. Both sides now move for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[17] On cross-motions for summary judgment, the court reviews each party's motion independently, construing the evidence and inferences in the light most favorable to the nonmoving party.[18]

## III. ANALYSIS

Mid-Continent argues as a threshold matter that none of the Plaintiffs are insured under the Policy because none of the Plaintiffs are expressly named in the policy declarations as a "Named Insured." The Policy contains the following relevant language regarding who is not insured:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.[19]

---

[16] Fed. R. Civ. P. 56(c).
[17] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[18] *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994)).
[19] *See* Mid-Continent's Motion, Ex. E at 18, Ex. F at 18.

It is undisputed that the only "Named Insured" on the Policy is VRV, Inc.[20]  Thus, under the express contractual language at issue, none of the Plaintiffs (VRV, Marken Management, and Kenny Marchant) are insured under the Policy.

Mid-Continent points out that VRV, Inc.—the only "Named Insured" on the Policy—is not named as a defendant in the underlying suit, and that this fact is dispositive of the issue under the "eight corners rule" followed by Texas courts.  The "eight corners rule" of insurance contract construction states that "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."[21]  Mid-Continent argues, pursuant to the eight corners rule, that the Court may not consider extrinsic evidence to determine whether the Plaintiffs are insured under the Policy.  However, the Court agrees with Plaintiffs that recent Fifth Circuit law provides an exception to the eight corners rule that applies here.

In *Northfield Ins. Co. v. Loving Home Care, Inc.*[22], the Fifth Circuit made an "*Erie* guess" that, were the Texas Supreme Court to recognize an exception to the eight corners rule, it would be limited to cases in which "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[23]  While not explicitly endorsing the exception, the Texas Supreme Court discussed this language in *GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*[24] while holding that it did not apply to the case before it.[25]  In *Ooida Risk Retention*

---

[20] *See* Plaintiff's Motion at 9 (citing App. at 43, 91).
[21] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308) (Tex. 2006)) (internal quotation marks omitted)).
[22] 363 F.3d 523, 528 (5th Cir. 2004).
[23] *Id.* at 531 (emphasis original).
[24] 197 S.W.3d 305 (Tex. 2006).
[25] *See id.* at 309-10.

*Group, Inc. v. Williams*,[26] the Fifth Circuit interpreted the reference in *GuideOne* as tacitly approving the exception, and applied it accordingly.[27]

The limited conditions of the *Northfield* exception exist in this case. The facts relevant to whether Plaintiffs are insured—whether VRV succeeded to the insurance coverage of VRV, Inc. under Texas law, as urged by Plaintiffs—are readily ascertainable, do not contradict any of the allegations in the pleadings of the underlying suit, and control the question of policy coverage.[28] Most importantly, they do not implicate VRV's alleged negligence or breach of any duties in the underlying suit, and therefore do not "overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[29] This Court therefore considers evidence outside of the Policy provisions and the pleadings in the underlying lawsuit to determine whether Plaintiffs are insured under the Policy.

The extrinsic evidence shows that VRV, Inc. was converted from a Texas corporation to a Texas limited partnership, effective January 1, 2005.[30] Plaintiffs contend that coverage was extended to VRV after this conversion because "every contract incorporates the law,"[31] and that under Texas law, the VRV partnership is the "legal equal" of the VRV corporate entity.[32]

Plaintiffs cite to Texas Business Corporations Act § 5.20, re-codified at Texas Business Organizations Code § 10.106, to support their argument that VRV could not have forfeited its insurance coverage because it chose to avail itself of a conversion procedure authorized by Texas law. That statute provides, in relevant part:

---

[26] 579 F.3d 469 (5th Cir. 2009).
[27] *Id.* at 475-76.
[28] *See id.* at 476 (holding that whether an insured person was tandem-driving his truck with another driver was necessary to determine the initial question of coverage, and thus considering extrinsic evidence).
[29] *Northfield*, 363 F.3d at 531.
[30] *See* Plaintiffs' Motion at 5 (citing App. at 184) (noting that the conversion is a matter of public record of which the Court may take judicial notice).
[31] Plaintiffs' Consolidated Response at 6.
[32] *Id.*

> Art. 5.20 EFFECT OF CONVERSION.
>
> A. When a conversion of a converting entity takes effect:
>
> (1) The converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form;
>
> (2) *all rights, title, and interests to all real estate and other property owned by the converting entity* shall continue to be owned by the converted entity in its new organizational form without reversion or impairment, without further act or deed, and without any transfer or assignment having occurred, but subject to any existing liens or other encumbrances thereon;
>
> (3) all liabilities and obligations of the converting entity shall continue to be liabilities and obligations of the converted entity in its new organizational form without impairment or diminution by reason of the conversion;
>
> (4) all rights of creditors or other parties with respect to or against the prior interest holders or other owners of the converting entity in their capacities as such in existence as of the effective time of the conversion will continue in existence as to those liabilities and obligations and may be pursued by such creditors and obligees as if the conversion had not occurred . . . .

*Id.* (emphasis added).

The Court is not aware of any decisions interpreting § 5.20 in the context of insurance contracts. Plaintiffs cite to *Lee v. Martin Marietta Materials Southwest, Ltd.*[33] as analogous support for their argument. *Lee* held that a guarantor could not escape his guarantee obligations to a business entity solely by virtue of that entity's change in name or organizational form.[34]

This case is distinguishable from *Lee*. The conversion of a creditor entity from a corporation to a limited partnership has no bearing on a guarantor's obligation to pay his debts to that creditor arising under a guaranty contract. Here, however, Mid-Continent has contracted not to pay a simple debt, but to bear a risk that it evaluated and voluntarily accepted. "The transaction is viewed in the light of the nature of the insurance contract and the reasonable

---

[33] 141 S.W.3d 719 (Tex. App.—San Antonio 2004, no pet.).
[34] *See id.* at 721 (citing *SEI Bus. Sys., Inc. v. Bank One Texas, N.A.*, 803 S.W.2d 838, 840 (Tex. App—Dallas 1991,

requirements of the underwriter."[35] Allowing Plaintiffs to substitute a new party to an insurance contract, without Mid-Continent's knowledge or approval, and without giving Mid-Continent the opportunity to evaluate the entity or person it is purportedly insuring, materially rewrites that insurance contract in a way that would seem to contravene existing authority.[36]

The Policy clearly states that "no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." VRV, Inc. was the only Named Insured. It never notified Mid-Continent of its conversion into a partnership, nor did it request any coverage for the converted entity. Mid-Continent never had the opportunity to evaluate Marken Management, GP, L.L.C., the general partner of VRV, or any other change in the VRV structure. Plaintiffs therefore are not insured under the Policy, and Mid-Continent thus has no duty either to defend or to indemnify Plaintiffs in the underlying action.

---

no writ)).

[35] *Weisfeld v. St. Paul Fire & Marine Ins. Co.*, 236 F. Supp. 496, 499 (S.D. Tex. 1964) (quoting *Dean v. Pioneer Co-op. Fire Ins. Co.*, 231 F.2d 18, 21 (5th Cir. 1956)) (internal quotation marks omitted).

[36] *Compare id.* at 499 (holding that an insurer under a fire insurance policy has an interest in the personality of the individual whose property was insured, and that the change in character of the ownership of the property relieved the insurer of liability under the policy sued upon) and *Lee*, 141 S.W.3d at 721-22 (distinguishing *Marshall v. Ford Motor Co.*, 878 S.W.2d 629 (Tex. App.—Dallas 1997, no pet.), in which the Dallas Court of Appeals held that guarantors had only guaranteed obligations incurred by Ford Marketing Corporation, which could not hold guarantors responsible for new obligations it separately incurred after it became an entirely new entity by merging with another company) *with Phoenix Indemnity Co. v. Marquette Casualty Co.*, 320 F.2d 486, 491-92 (5th Cir. 1963) (holding that a newly incorporated entity was covered under an insurance policy, where the insurance company was informed of, and agreed to, the change in the entity's corporate form, and where the operations of the insured "were managed by the same human beings and . . . the activities and operations were performed by the same persons and with the same equipment," such that "[t]he risk was not changed in any manner" and "[t]he true ownership of the properties was, in substance, the same ") *and Tex. Banking & Ins. Co. v. Cohen*, 47 Tex. 406 (Tex. 1877) (holding that a partnership where one partner had sold his interests to the other partners was still covered under an insurance policy, despite the change in the constitution of the partnership, because there was no substantial change material to the risk, and the change in membership of the partnership was not such a change in the persons who had originally contracted for the insurance as to prevent a suit on the policy by the partnership).

## IV. CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Mid-Continent's Motion for Summary Judgment is GRANTED. The Court will enter Final Judgment in a separate Order.

**SO ORDERED.**

February 3, 2010.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS